Dear Representative Cozort,
¶ 0 This office has received your request for an official Opinion, wherein you ask, in effect, the following questions:
1. In those years in which there is no appropriation for amidterm supplement, is the State Board of Education authorized orrequired to provide funding supplements to school districts?
2. Is the State Aid Formula constitutional as its funding methoddoes not count current year student growth until the followingschool year, thus not funding midterm students?
 I.
¶ 1 You have asked this office to determine whether the State Board of Education may provide a midterm funding supplement in the absence of a specific legislative appropriation. Oklahoma law provides for a midterm supplement in State Aid for "growing" school districts. Specifically, Title 70, provides:
 For each school year, any school district with a membership that is at least one and one-half percent (11/2%) greater than the highest average daily membership of the preceding two (2) years of the school district shall receive a midterm supplement in State Aid to be determined as follows[.][1]
70 O.S.Supp. 1995, § 18-200[70-18-200](C).
¶ 2 Your first question is directly answered by subsection 6 of Section 18-200(C) which provides:
 If funds appropriated to the State Board of Education for the purpose of paying the midterm supplement in State Aid are not sufficient to fully fund the amount determined by this subsection, each school district which qualifies for such funding shall receive a proportionate reduction in funding.
70 O.S.Supp. 1995, § 18-200[70-18-200](C)(6).
¶ 3 "[L]egislative intent is the controlling element in the judicial interpretation of statutes," but, "if the statutes contain no inconsistent provisions, no ambiguities, or uncertainties, no occasion exists for the application of rules of construction and the statutes will be accorded the meaning as expressed by the language" used. Matter of Phillips PetroleumCompany, 652 P.2d 283, 285 (Okla. 1982). It is presumed that the Legislature, in a statute, says what it means and means what it said. Darnell v. Chrysler, 687 P.2d 132, 134 (Okla. 1984).
¶ 4 Subsection 6 specifically provides for proration in the event the funds appropriated for the purpose of paying the midterm supplement are not sufficient. Applying the statute to a situation where funds are not specifically appropriated for the purpose of a midterm supplement, it is clear that there would be no midterm supplement.
¶ 5 The statute contemplates that monies will only be expended for a midterm supplement to the extent the specific appropriation is available. The provision for proration where the appropriation is not sufficient to fund one hundred percent of the supplement shows a legislative intent to limit the supplement to the funds available from the specific appropriation. Therefore, funds appropriated to the State Board of Education for purposes other than a midterm supplement may not be used to fund the supplement.
 II.
¶ 6 Your second question seeks a determination of the constitutionality of the State Aid formula. In essence, you ask whether the Oklahoma Constitution mandates equal funding for all students. This question has been answered by the Supreme Court inFair School Finance Council of Oklahoma v. State, 746 P.2d 1135
(Okla. 1987). In Fair School Finance, an action was brought by public school students and others challenging the constitutionality of the State system of financing public education, claiming that the formula used violated the United States and Oklahoma Constitutions. The Fair School Finance
Court found that Article XIII, § 1, which provides that "[t]he Legislature shall establish and maintain a system of free public schools wherein all children of the State may be educated," and Article I, § 5, which states that "[p]rovisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all children of the state," merely mandate actions by the Legislature to establish and maintain a system of free public schools. The Court specifically found that these sections do not on their face guarantee equal expenditures per pupil. Fair School Finance, 746 P.2d at 1149. The Court further cited Article XIII, § 1a as support for this conclusion. Article XIII, § 1a provides in pertinent part:
 [M]oneys shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature . . . [and] the amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature. . . .
Okla. Const. art. XIII, § 1a (emphasis added).
¶ 7 In addition to finding that per pupil equality is not required the Fair School Finance Court found this provision to mandate that State funds may be distributed as the Legislature sees fit. Fair School Finance, 746 P.2d at 1150.
¶ 8 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. Pursuant to 70 O.S.Supp. 1995, § 18-200(C)(6), in theabsence of a specific legislative appropriation for a mid-termsupplement, the State Board of Education lacks authority toprovide a midterm funding supplement.
2. The school funding formula is not violative of Article I, § 5or Article XIII, § 1 of the Oklahoma Constitution merely because,in some instances, per pupil expenditures may be unequal.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] Subsections 1 through 5 of 70 O.S.Supp. 1995, § 18-200[70-18-200](C), provide the method by which the midterm supplement is calculated.